Douglas M. HUNDT, Appellant,

v.

**IOWA DEPARTMENT OF HUMAN SERVICES, Appellee.**

No. 95–64.

Supreme Court of Iowa.

March 20, 1996.

Susan Dulek of Legal Services Corporation of Iowa, for appellant.

Thomas J. Miller, Assistant Attorney General, Gordon Allen, Deputy Attorney General, and Patricia R. Hemphill, Assistant Attorney General, for appellee.

---

**307**

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

A statute, Iowa Code section 252C.2(2) (1993), prevents a support debt from accruing against a "responsible person" for the period during which that person receives public assistance for the benefit of a dependent child. This dispute concerns whether this protection can be urged by a father against the State. The State, by defendant Iowa department of human services (DHS), acquired its interests by an assignment from a mother of her right to child support from the father. The question is whether the department's rights under the assignment control over the father's statutory protections. The trial court ruled the department's right prevailed. We think the father's should.

The facts are not disputed. Douglas Hundt is married to Angela Hundt, and they are the parents of a minor son. Due to marital difficulties the couple separated sometime during the fall of 1987, and Douglas left the marital home. Angela then applied for and received assistance from DHS in the form of aid to families with dependent children (AFDC).

Congress established the AFDC program in 1935 to provide welfare payments to children who were impoverished due to the absence, incapacity, or death of a parent. 42 U.S.C.A. § 606(a) (West Supp.1995); *Batterton v. Francis,* 432 U.S. 416, 418, 97 S.Ct. 2399, 2402, 53 L.Ed.2d 448, 452 (1977). The program was designed to enable widows and divorced mothers to stay at home and care for their children without having to work outside the home, thus eliminating the usual practice then of institutionalizing children whose families face such a predicament. *Batterton,* 432 U.S. at 418, 97 S.Ct. at 2402, 53 L.Ed.2d at 452. AFDC was not intended to assist families who were needy because the principal earner (usually the father) was unemployed. *Id.* at 419, 97 S.Ct. at 2402, 53 L.Ed.2d at 452. Instead it was assumed that

other social welfare programs would address this problem by attacking unemployment directly. *Id.*

■ In 1961 the AFDC program was amended to create an experimental program (AFDC—unemployed father) which provided assistance in certain situations where a parent's unemployment caused a child to become destitute. *Id.* at 420, 97 S.Ct. at 2402, 53 L.Ed.2d at 453. The aim was to provide benefits for needy children without giving an incentive to the principal earner to desert the family in order to make it eligible for assistance. *Oberschachtsiek v. Iowa Dep't of Social Serv.*, 298 N.W.2d 302, 304 (Iowa 1980). After some modifications to eliminate variations in coverage among the states, the experimental program was made permanent. *Id.* at 305; 42 U.S.C.A. § 607(a) (West Supp. 1995).

■ Both programs are joint ventures between the federal government and the states, with funding provided on a matching basis. *Batterton,* 432 U.S. at 420, 97 S.Ct. at 2403, 53 L.Ed.2d at 453. Participation is optional, but once a state elects to participate in a program, as Iowa has with both, it must abide by federal statutes and regulations. *Oberschachtsiek,* 298 N.W.2d at 305; *see also* Iowa Admin.Code r. 441–41.1(5) (providing aid pursuant to Iowa Code chapter 239 for children who are needy because of an "absent" parent); Iowa Admin.Code r. 441–42.2 (providing aid pursuant to Iowa Code chapter 239 for children who are needy due to a "parent's unemployment").

As required by Iowa Code section 252C.2(1), Angela assigned her rights to future, current, and back child support to DHS up to the amount of AFDC she received. She received the benefits in the months of November 1987, December 1987, and January 1988 for her and her child. In December 1987 the child support recovery unit (CSRU), a division of DHS, filed in district court an administrative order for reimbursement and future support. It required Douglas to pay $150 per month in support beginning January 1, 1988. It did not require reimbursement for back child support.

Douglas and Angela were thereafter reconciled and Douglas returned to the marital home beginning in February 1988. Financial troubles continued so the family received AFDC through the unemployed parent program in the months of February 1988, March 1988, January 1992, February 1992, March 1992, April 1992, and May 1992. Despite the reconciliation, the child support order against Douglas was not modified until December 9, 1992, when an order terminated the current child support obligation and satisfied the amount Douglas owed Angela. Between the entry of the order in December of 1987 and its termination in December of 1992, a total support obligation of $9000 accrued (sixty months × $150).

The CSRU eventually sought to recoup the AFDC benefits granted to the Hundts by enforcing the delinquent child support debt Angela had assigned to DHS. In October 1993 the CSRU mailed Douglas a federal tax refund notice informing him that his federal tax refund would be withheld for child support due. The notice stated that Douglas had a right to contest the amount due by requesting an administrative review, and Douglas requested such a review. The CSRU thereafter issued an order finding Douglas owed DHS $3517.

As can be seen, the public assistance was rendered at two different times under two distinct programs: (1) Angela and her son received benefits through the regular AFDC program in November 1987, December 1987, and January 1988 based on Douglas's absence from the home; and (2) in February and March of 1988 and January through May of 1992, Douglas, Angela, and their son received benefits through the AFDC unemployed parent program based on Douglas's unemployment. There is no question concerning the first time period; Douglas agrees he owes child support (to DHS by assignment) for the month of January 1988. DHS does not contend he owes it for November and December 1987, apparently because the administrative order filed by the CSRU did not require reimbursement for back child support. The dispute involves the second period. When CSRU ruled against him regarding payments during that period,

Douglas petitioned for judicial review. The district court upheld DHS's administrative decision, and the matter is before us on Douglas's appeal.

■ Our review is on error. Iowa R.App.P. 4. Douglas sought judicial review in district court of a final agency action under the power conferred by the Iowa administrative procedure Act, and the sole question on appeal is whether the district court correctly applied the law. *Foods, Inc. v. Iowa Civil Rights Comm'n*, 318 N.W.2d 162, 165 (Iowa 1982).

■ I. Douglas grounds his argument on a distinction between a "support order" and a "support debt." A "support order" is created when DHS, acting through the CSRU, files a copy of an administrative support order in district court. Iowa Code § 252C.5. Unless defects appear on the face or on the attachments, the district court must approve the order, and it has the same effect as any other court decree. Iowa Code § 252C.5(1). A "support debt" arises in favor of DHS and against a "responsible person" [1] when a dependent receives public assistance. Iowa Code § 252C.2(2).

Douglas concedes he is a responsible person within the meaning of the statute, but correctly notes that the establishment of a support debt is limited in two ways. First it is set at an amount equal to the public assistance payment, not to exceed the amount of the support obligation established by the support order. *Id.* Second "a support debt is not created in favor of the department against a responsible person for the period during which the responsible person is a recipient on the person's own behalf of public assistance for the benefit of the dependent child or the dependent child's caretaker." *Id.* Stressing the second limitation, Douglas concludes that a support debt could not have been created against him after January 1988 because he was the recipient on his own behalf for the benefit of his spouse and child through the AFDC unemployed parent program. Thus Douglas insists he is not re-

quired to reimburse DHS for the assistance received in February and March of 1988 and January through May of 1992.

DHS offers a three-fold response. First, noting that the support order was not modified until after the period at issue, it cites the rule that a support order can be modified retroactively only to the first day of the month following the filing of a motion to modify. Iowa Code § 598.21(8). *See State ex rel. Hunter v. Hunter*, 501 N.W.2d 533, 535–36 (Iowa 1993). The second step in DHS's response is grounded in its statutory right to the assignment. As a prerequisite to eligibility for AFDC, an applicant must assign all his or her rights to periodic support payments to the extent of the public assistance received. Iowa Code § 239.3. The assignment terminates when the applicant ceases to receive assistance, except with regard to the amount of unpaid support obligations accrued under the assignment. *Id.; see also Broyles v. Iowa Dep't of Social Serv.*, 305 N.W.2d 718, 723 (Iowa 1981) (holding under the facts that the ex-husband was not relieved from payment of delinquent support assigned to DHS when his former wife executed a release); *Pray v. Iowa Dep't of Human Serv.*, 436 N.W.2d 55, 56 (Iowa 1989) (finding assignment was not limited to child support payments accrued during period former wife received AFDC benefits, but included support payments accrued prior to assignment as well).

Finally DHS asserts Iowa Code chapter 252C concerns only the circumstances under which DHS *establishes* a support order. While conceding that DHS would not seek to *obtain* a support order when both parents are recipients of public assistance, DHS argues chapter 252C does not apply here because a support order had already been established. Thus DHS contends that, once the support order was initially entered against Douglas, *nothing short of judicial modification* could prevent the accrual of the support debt and his presence in the public assistance household was irrelevant. DHS

---

1. Iowa Code § 252C.1(8) defines a "responsible person" as "a parent, relative, guardian, or another person legally liable for the support of a child or a child's caretaker." In turn, Iowa Code

§ 252C.1(2) defines a "caretaker" as "a parent, relative, guardian, or another person ... whose needs are included in an assistance payment made pursuant to chapter 239."

therefore concludes that the accrued child support order was a valid judgment against Douglas authorizing it to recoup its expenditure of public assistance funds.

We think Douglas has the stronger argument. In the final analysis the amount DHS can recoup should be limited to the amount the family owes the State. That amount should not be affected by any larger amount the parties might owe each other. We think the purpose of the statute requiring Angela's assignment was to provide the State with a means to recoup only in accordance with the statutory scheme. That scheme includes the statutory protection Douglas claims, and DHS's interest must yield to it.

This view is consistent with our holdings in closely-related issues. *State ex rel. Mack v. Mack,* 479 N.W.2d 327, 329 (Iowa 1992) (State precluded from seeking reimbursement against responsible person for benefits paid when the person is recipient on the person's own behalf of state assistance for benefit of a dependent child or dependent child's caretaker); *Greene v. Iowa Dist. Ct.,* 312 N.W.2d 915, 917–18 (Iowa 1981) (on remarriage of parties, only *accrued* installments, not *future* installments of child support payments, enforceable).

Douglas owes only for the installment for January 1988. The case must be remanded for entry of a judgment so providing.

**REVERSED AND REMANDED.**