2004 VT 127

## Office of Child Support ex rel. Melissa Lewis v. James L. Lewis, Jr.

[882 A.2d 1128]

No. 03-354

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed December 23, 2004
Motion for Reargument Denied July 12, 2005

*Christin L. Semprebon*, Springfield, for Plaintiff-Appellee.

*Kimberly B. Cheney* of *Cheney, Brock & Saudek, P.C.*, Montpelier, for Defendant-Appellant.

¶ 1. **Johnson, J.** Father appeals from a Windsor Family Court order in favor of the Vermont Office of Child Support requiring him to reimburse the State of Iowa for public assistance paid to his estranged wife on behalf of the parties' children. We reverse, holding that the family court lacked subject matter jurisdiction over the claim in the absence of an Iowa court order establishing the debt and father's repayment obligation in the first instance.

¶ 2. Father and mother were married in Vermont in 1990 but have not lived together for many years. They have two minor children whom father has not seen since 1994. Since separating years ago, mother has not sought child support, and neither parent filed for legal separation or divorce before the Vermont Office of Child Support (OCS) initiated the proceedings at issue here.

¶ 3. OCS commenced this action in July 2002 by filing a petition in the Windsor Family Court. OCS sought a judgment in favor of the State of Iowa in the amount of $4,126.67 for past support Iowa provided to mother and the children. As authority for its petition, OCS

cited two provisions of Vermont law. The first provision, chapter 39 of Title 33, allows the family court to order a parent to reimburse Vermont's Department of Prevention, Assistance, Transition, and Health Access (PATH) for public assistance PATH paid to support the parent's children. The second provision, § 293(a) of Title 15, gives the family court jurisdiction over child support matters when married parents live separately. OCS filed with the petition additional documents that originated in Iowa and were sent to OCS by the Iowa Child Support Recovery Unit (ICSRU). The documents were approved for use in interstate support proceedings pursuant to the Uniform Interstate Family Support Act (UIFSA), and they indicated that Iowa had not issued a child support order or a judgment on the public assistance debt before asking for OCS's help in obtaining an order from the Vermont court. ICSRU sought an order from Vermont because, as a Vermont resident, father is subject to the jurisdiction of Vermont courts.

¶ 4. The family court magistrate heard OCS's request in February 2003. Because mother's whereabouts were unknown, she was not present for the hearing. Father appeared pro se. Counsel for OCS explained to the magistrate that ICSRU contacted OCS in October 2001 for assistance in recovering the benefits Iowa paid to mother for several months in 1999 and 2000. OCS acknowledged that father did not receive notice of the debt from Iowa before OCS filed its petition in Vermont, and it suggested that the court calculate the judgment according to Vermont's child support guidelines.

¶ 5. The magistrate granted the petition. She reasoned that father's duty of support arose when his children were born, and that authority existed to require him to repay public assistance given to his children during a time when he was not supporting them. The magistrate created a debt based on Vermont's child support guidelines for an Iowa obligation that was never reduced to an administrative or court judgment. Father appealed the magistrate's decision to the family court. The family court upheld the decision after analyzing OCS's petition under UIFSA's provisions exclusively. The court explained that father has an inherent duty to support his children, and reasoned that ICSRU could lawfully "seek reimbursement of an 'arrearage' even without prior legal procedures[]" in Iowa. The court did not consider whether the statutes OCS cited in support of the petition gave it authority to adjudicate the Iowa debt in the first instance, however. Following the court's entry of judgment, father appealed to this Court.

¶ 6. On appeal, father argues that the family court denied him due process by issuing the child support order without prior notice of Iowa's claim or an opportunity to challenge it. We review father's claim de novo because it raises a question of law. *Lambert v. Beede*, 2003 VT 75, ¶ 9, 175 Vt. 610, 830 A.2d 133 (mem.). We agree with father that the court's order is invalid, but rather than reach the constitutional question, we reverse on statutory grounds. We hold that, absent prior proceedings in Iowa establishing the public assistance debt and father's repayment obligation according to Iowa law, the family court lacked jurisdiction to issue a Vermont child support order directing father to repay the debt.

¶ 7. The scope of the family court's jurisdiction is limited by statute. *LaPlume v. Lavallee*, 2004 VT 78, ¶ 7, 177 Vt. 526, 858 A.2d 255 (mem.). We strictly construe the family court's grant of authority, and we do not infer jurisdiction where it does not explicitly exist. *Id.* ¶ 8; e.g., *Rogers v. Wells*, 174 Vt. 492, 494, 808 A.2d 648, 650 (2002) (mem.) (explaining that family court has no statutory jurisdiction over the separation of unmarried parents outside parentage proceedings). In this case, there are only three possible sources for the court's subject matter jurisdiction over OCS's petition: (1) chapter 39 of Title 33; (2) § 293 of Title 15; and (3) UIFSA, 15B V.S.A. §§ 101-904. 4 V.S.A. § 454(1), (3), (9). When considering claims that arise under a statute, we apply the plain meaning of the statute's words because we presume it reflects the Legislature's intent. *Colwell v. Allstate Ins. Co.*, 2003 VT 5, ¶ 7, 175 Vt. 61, 819 A.2d 727. In this case, we conclude that the court's proceeding, and the order flowing from it, were not authorized under the plain language of those statutes.

¶ 8. We begin with the court's jurisdiction under chapter 39 of Title 33 because that was the primary authority on which OCS relied for its filing. Chapter 39 of Title 33 governs the assignment of rights to child support, and the state's right to reimbursement of benefits, when a parent receives public assistance from PATH in Vermont. 33 V.S.A. §§ 3901-3904; *Desrochers v. Descrochers*, 173 Vt. 312, 313, 795 A.2d 1171, 1172 (2002). Section 3903(2) allows PATH to recoup benefits it provided to a parent through a child support proceeding in family court. 33 V.S.A. § 3903(2). The statute does not give the family court jurisdiction to order repayment of public assistance benefits paid to an individual by another state; its terms limit the right to recoupment to

PATH.* In this case, the State of Vermont did not pay out any of the benefits for which OCS sought recovery, and OCS did not receive an assignment of rights from mother to seek child support from father. Therefore, chapter 39 of Title 33 cannot support the court's jurisdiction over OCS's claim because the claim falls outside the plain language of the statute.

¶ 9. Similarly, § 293(a) of Title 15 does not apply here. Section 293(a) provides in relevant part:

> When parents of minor children[ ] . . . whether said parents are married or unmarried, are living separately, on the complaint of either parent . . . or, *if it is a party in interest,* the department of prevention, assistance, transition, and health access, the family court may make such decree concerning . . . the support of the children, as in cases where either parent deserts or without just cause fails to support.

15 V.S.A. § 293(a) (emphasis added). Although father and mother live separately as § 293(a) contemplates, neither OCS nor PATH is a party in interest in this case because neither agency holds an assignment of support rights from mother. See *Cantin v. Young,* 170 Vt. 563, 564, 742 A.2d 1246, 1247 (1999) (mem.) (holding that OCS is not a party in interest in a child support proceeding where OCS has not received an assignment of rights to support). The real party in interest is the State of Iowa because the public assistance benefits at issue were provided in Iowa, and an Iowa agency, ICSRU, received mother's assignment of rights to child support. By its own terms, therefore, § 293(a) does not apply and does not confer jurisdiction over OCS's petition.

¶ 10. Although OCS pleaded no other basis for its complaint, the family court upheld the order by relying on UIFSA. It concluded that "[u]nder the Iowa [public assistance program], and under UIFSA, the State of Iowa may seek reimbursement of an 'arrearage' even without prior legal procedures." We find no legal basis for that conclusion under either Vermont or Iowa law.

---

* An intermediate appellate court in Virginia reached a different conclusion in *Commonwealth v. Chamberlin,* 525 S.E.2d 19, 23 (Va. Ct. App. 2000), a case factually similar to the one before us. In that case, the Virginia court construed provisions of Virginia law that have no bearing on our interpretation of the Vermont statutes at issue in this case. *Id.* at 22-23. Its reasoning is unpersuasive.

¶ 11. UIFSA was designed to expedite the interstate enforcement of child support orders through uniform procedures. *Walton v. State ex rel. Wood*, 2002 WY 108, ¶ 7, 50 P.3d 693; P. Hatamyar, *Interstate Establishment, Enforcement, and Modification of Child Support Orders*, 25 Okla. City U. L. Rev. 511, 515 (2000); J. Sampson, *Uniform Interstate Family Support Act (1996)*, 32 Fam. L.Q. 390, 418 (1998). The law is primarily a procedural mechanism, *Butler v. Butler*, 566 S.E.2d 707, 709 (N.C. Ct. App. 2002), that does not expand the UIFSA tribunal's jurisdiction over child support orders. 15B V.S.A. § 103 cmt.; see *id.* § 305(b) cmt. ("[T]he Act explicitly states that a tribunal is not granted any powers that it does not otherwise possess under state law."). As Vermont's UIFSA tribunal pursuant to § 102 of the Act, the family court has two roles. It acts either as an "initiating tribunal" or a "responding tribunal." *Id.* §§ 304, 305. As a "responding tribunal," the role the court played in this case, the family court may establish and enforce child support orders pursuant to § 305(b) of the Act. *Id.* § 305(b). The statute limits the court's authority to issue such orders *"to the extent otherwise authorized by law." Id.* (emphasis added). In other words, UIFSA requires the family court to have another statutory basis for entering a child support order. We have already concluded that the family court has limited authority to enter a judgment on a public assistance debt and that authority does not extend to debts arising outside Vermont. The family court was not, therefore, "otherwise authorized by law" to enter the order at issue here.

¶ 12. The family court also erred by concluding that prior legal proceedings were not required by Iowa law or UIFSA before it could act on OCS's petition. A debt arises as a matter of law upon a parent's receipt of public assistance in Iowa just as it does in Vermont. Compare Iowa Code § 252C.2(2) with 33 V.S.A. § 3903. The debt is not enforceable, however, until it is reduced to a valid court order according to the procedures established by the Iowa legislature. Iowa Code ch. 252C; see also *Hundt v. Iowa Dep't of Human Servs.*, 545 N.W.2d 306, 310 (Iowa 1996) (permitting recoupment of public assistance debt within confines of Iowa's statutory requirements only). The recoupment procedures Iowa established give the obligor the "fundamental elements of due process." *State ex rel. Houk v. Grewing*, 586 N.W.2d 224, 227 (Iowa Ct. App. 1998). The obligor is entitled to notice from ICSRU that a debt has been incurred and that the agency intends to secure repayment through a child support order. Iowa Code § 252C.3(1); Iowa Admin. Code § 441-99.41(3). The obligor also has the

right to request a judicial hearing to challenge the debt. Iowa Code § 252C.3(4)(e); *id.* § 252C.4(1); Iowa Admin. Code § 441-99.41(7). Finally, before an ICSRU determination on the debt is enforceable, an Iowa court must ratify the agency's decision. Iowa Code § 252C.4(4); Iowa Admin. Code § 441-99.41(9), (10). We note that the court's ratification is not a meaningless rubber stamp because the court retains its inherent authority to review an ICSRU determination for substantive and procedural irregularities. *State ex rel. Allee v. Gocha,* 555 N.W.2d 683, 686 (Iowa 1996). In this case, ICSRU failed to provide father with any of the "fundamental elements of due process" mandated by Iowa law before coming to Vermont. Father was not given notice of the debt or an opportunity to challenge it in an Iowa court, nor did an Iowa court ratify ICSRU's debt before the agency sought judgment on it in Vermont. ICSRU's failure to obtain an Iowa order on the debt in the first instance is·fatal to its ability to recoup the debt in Vermont, and the family court erred by concluding otherwise.

¶ 13. Iowa law also required ICSRU to obtain a valid Iowa order on the public assistance debt before it had authority to commence UIFSA proceedings in Vermont. The family court did not consider the extent of ICSRU's authority under Iowa law to pursue a Vermont order by treating the petition as a so-called "direct filing" under § 301(c) of UIFSA. Section 301(c) of UIFSA provides:

> An individual petitioner or *a support enforcement agency* may commence a proceeding authorized under this title *by filing a petition in an initiating tribunal for forwarding to a responding tribunal or by filing a petition or a comparable pleading directly in a tribunal of another state which has or can obtain personal jurisdiction over the respondent.*

15B V.S.A. § 301(c) (emphasis added). We must assume for this analysis that the family court considered ICSRU as the petitioning "support enforcement agency" under § 301(c) even though the OCS was the actual petitioner. Although the plain language of this section suggests that ICSRU could file its claim in family court without the assistance of OCS, § 252K.102 of the Iowa Code requires ICSRU to obtain a court-ratified child support order before commencing UIFSA proceedings. See Iowa Code § 252K.102 (permitting ICSRU to initiate UIFSA proceedings as an "initiating tribunal" but only when "the unit establishes, or modifies an order, upon ratification by the court"); Iowa Admin. Code § 441-99.41(5), (9). Moreover, the direct filing option § 301(c) provides does nothing more than give the family court per-

sonal jurisdiction over the out-of-state petitioner by consent. 15B V.S.A. § 103, cmt.; Comment, *Jurisdictional Issues Under the Uniform Interstate Family Support Act*, 16 J. Am. Acad. Matrimonial L. 243, 254 (1999). The section does not create jurisdiction where it does not otherwise exist, and § 305(b) of UIFSA still requires the court's support order to be "otherwise authorized by law." 15B V.S.A. § 305(b). As we have already held, Vermont law does not "otherwise authorize" the family court to render a judgment on an out-of-state public assistance debt unless the debt is already embodied in a valid court order.

■ ¶ 14. It appears that ICSRU attempted to circumvent the requirements of Iowa law by asking OCS to file the petition on its behalf. The family court should have rejected that attempt because the plain language of § 301(c) does not permit OCS to file the petition at issue here. As Vermont's child support enforcement agency pursuant to UIFSA, 15B V.S.A. § 104, OCS may initiate a § 301(c) proceeding in one of two ways only: (1) by filing "in an initiating tribunal for forwarding to a responding tribunal," or (2) by filing "directly in a tribunal of another state which has or can obtain personal jurisdiction over the respondent." The petition OCS filed in this case meets neither criterion. The family court was acting as a "responding tribunal" in this case, not as an "initiating tribunal," as the court itself acknowledged, and OCS filed its petition in Vermont rather than in "a tribunal of another state." OCS's petition was not permitted by § 301(c) for those reasons. No matter how one views the petition here, the family court did not have jurisdiction to enter a child support order reflecting the Iowa debt absent an existing Iowa court order establishing the debt and father's obligation to repay it.

¶ 15. We do not perceive this case as one exposing a statutory loophole that defeats UIFSA's essential purpose and the Legislature's intent. Although UIFSA is a uniform law that purports to facilitate long-distance enforcement of child support, each state has enacted its own procedures for the establishment of child support orders. If the order is established according to law in one state, the order can be enforced through this interstate mechanism. If, on the other hand, the order is not established according to law, UIFSA enforcement procedures cannot overcome the defect and expand a court's jurisdiction. Had ICSRU first obtained an Iowa court order ratifying the public assistance debt as Iowa law requires, the Vermont family court would have had jurisdiction to enforce the order against father. See 15B V.S.A. §§ 601-614 (setting forth registration procedures for out-of-

state child support order for enforcement in Vermont). Because that did not happen before Iowa sought Vermont's assistance in this case, the family court lacked statutory authority to enter the order it did here.

¶ 16. Because we reverse the family court's order on grounds that OCS did not properly invoke the family court's jurisdiction, we do not reach the parties' other arguments in favor of their respective positions.

*Reversed and the judgment vacated.*