NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 26

No. 23-AP-254

| | |
|---|---|
| Santina Stone | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Family Division |
| | |
| Dale Henneke | January Term, 2024 |
| (Office of Child Support, Appellant) | |

Jennifer Barrett, J.

Kyle Hatt, Office of Child Support, Springfield, for Plaintiff-Appellant.

Dale Henneke, Pro Se, La Luz, New Mexico, Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.    **WAPLES, J.**   This appeal concerns the currency-exchange method applicable to a child-support order issued by a Canadian court. The Office of Child Support (OCS) appeals a decision of the family division concluding that the magistrate acted within her discretion in using a different currency-conversion method for calculating arrears than OCS had employed to collect payments due under the order. We affirm the family division's ruling that the magistrate had discretion to use a different conversion method. However, we reverse the portion of its order upholding the magistrate's determination that mother owed father as a result of the recalculated currency conversion and vacate the magistrate's order directing mother to pay father.

¶ 2.     The following facts are drawn from the decisions below.  Mother and father were previously married and lived together in Canada with their child.  They separated and in 2010, the Superior Court of Justice for Kitchener, Ontario awarded mother sole custody of the child.  That court ordered father to pay monthly child support of $1003 Canadian dollars (CAD) beginning immediately and $2250 CAD in spousal support beginning in April 2011 and terminating in April 2017.  Under the order, interest accrued on arrears at two percent per annum.  Although the order anticipated that mother and child would move to Vermont, the order did not contain any provision governing currency conversions that might be necessary due to mother's relocation.

¶ 3.     After the Canadian court issued its order, mother and child moved to Vermont.  Father later moved to New Mexico.  In 2013, the Ontario support enforcement agency stopped providing services to mother, and she requested services from OCS.  OCS did not initially seek to register the order with a Vermont court and instead used an administrative process to collect support.  When OCS began collecting support, it converted father's obligation from Canadian to U.S. dollars using the Bank of Canada exchange rate in effect on February 23, 2010, the date of the Canadian order.  This resulted in a monthly child-support obligation of $953.69 U.S. dollars (USD) and a spousal-support obligation of $2139.39 USD.

¶ 4.     From November 2013 to April 2017, OCS collected $3093.08 USD per month from father.  After April 2017, when the spousal-support obligation terminated, OCS collected $953.69 USD per month.  OCS did not adjust the amounts based on fluctuations in the exchange rate.  Father never objected to administrative withholding or sought to modify his support obligation.

¶ 5.     In October 2020, OCS filed a motion with the Vermont family division seeking to register the Canadian order and to modify father's child-support obligation to zero because the parties' child was no longer living with mother.  OCS also asked the court to adjudicate child and spousal support arrears.  According to OCS's records, father missed some payments in 2018 and 2019 and made partial payments for several months during that time, resulting in an arrearage.

2

¶ 6. In May 2021, the Vermont magistrate granted OCS's motion to register the Canadian order.[1] After a hearing in August 2021, the magistrate issued an order modifying the child-support obligation to zero because child was no longer residing with mother.

¶ 7. The magistrate held a further hearing in November 2021 at which OCS presented case accounting affidavits in support of its position that father owed $9811.14 USD in child-support arrears exclusive of interest, and owed interest on spousal-support arrears. Father opposed OCS's calculation of arrears, arguing that OCS should have applied the exchange rate in effect at the time he made each payment. He argued that it was unfair to apply the rate in effect in February 2010 because the value of the Canadian dollar in relation to the U.S. dollar had declined significantly since then.

¶ 8. In a December 2021 order, the magistrate concluded that it was permissible under 15B V.S.A. § 1307(d) for OCS to calculate the amount of father's obligation using the exchange rate in effect on the date of the Canadian order. However, after considering case law from other states, the magistrate determined that OCS should calculate father's arrears for each year using the exchange rate in effect on the first day of the year. The magistrate reasoned that this approach was supported by the statute and would provide a consistent and predictable measure of support income. The magistrate directed OCS to submit updated case-accounting affidavits using this method.

¶ 9. In January 2022, OCS submitted updated calculations using the method prescribed by the magistrate, which indicated that instead of owing arrears, father had overpaid $11,892.13 USD in support to mother. Following hearings held in May and November 2022, the magistrate issued orders determining that father had overpaid support and directing mother to repay father $11,892.13 USD at a rate of $50 per month.

---

[1] In Vermont, child-support matters are typically first adjudicated by the magistrate. See 4 V.S.A. § 461 (authorizing magistrate to determine child support in first instance).

¶ 10. OCS, father, and mother each appealed from the magistrate's decision to the family division of the superior court. OCS argued that the magistrate erred in ordering it to recalculate father's arrearage using a new method where the magistrate found that OCS's method complied with the statute. OCS and mother both argued that the recalculation of support resulted in a retroactive modification of child support impermissible under 15 V.S.A. § 660(e). Father argued that his obligation should have been converted using the exchange rate on the date of each payment. He argued that because OCS did not register the Canadian order until 2021, it should have enforced the order as written, using the currency stated therein.

¶ 11. The family division affirmed the magistrate's order. The family division reasoned that the court was authorized by 15B V.S.A. § 1305(f) to convert the amounts specified in the Canadian order to U.S. dollars, and the conversion was not a modification of the support order. It determined that 15 V.S.A. § 660(e) did not bar the magistrate from applying a new conversion rate because no party sought to modify the amount of support due under the Canadian order until OCS asked the court to terminate the child support obligation in 2020. Thus, the Canadian order was the relevant order for purposes of calculating any arrearages. The court determined that the magistrate acted within her discretion in applying a yearly conversion rate in her determination of arrearages, as this method accounted for currency fluctuations and was fair to the parties. OCS appealed to this Court.

¶ 12. Our review of the decision below is based on the record presented to the magistrate. Patnode v. Urette, 2015 VT 70, ¶ 6, 199 Vt. 306, 124 A.3d 430. We will affirm the magistrate's factual findings unless clearly erroneous and will uphold the magistrate's conclusions "if reasonably supported by the findings." Golden v. Worthington, 2020 VT 71, ¶ 7, 213 Vt. 77, 239 A.3d 259. We review questions of law de novo. Miller v. Miller, 2005 VT 89, ¶ 10, 178 Vt. 273, 882 A.2d 1196.

4

¶ 13.   The facts here are undisputed.  At issue in this appeal is whether the magistrate erred in applying a different currency-conversion method when calculating arrears under the Canadian order than the method OCS used in administratively collecting payment under the order. This question requires us to interpret various provisions of the Uniform Interstate Family Support Act (UIFSA), 15B V.S.A. §§ 1101-1903.  Our primary goal when interpreting a statute is "to determine the intent of the [L]egislature." In re S.B.L., 150 Vt. 294, 301, 553 A.2d 1078, 1083 (1988).  We look first to the plain language of the statute, and if that is unclear, "[t]he intent should be gathered from a consideration of the whole and every part of the statute, the subject matter, the effects and consequences, and the reason and spirit of the law." Langrock v. Dep't of Taxes, 139 Vt. 108, 110, 423 A.2d 838, 839 (1980) (per curiam) (quotation omitted).

¶ 14.   "UIFSA was designed to expedite the interstate enforcement of child support orders through uniform procedures." Off. of Child Support ex rel. Lewis v. Lewis, 2004 VT 127, ¶ 11, 178 Vt. 204, 882 A.2d 1128.  Vermont, like every other state, has adopted the 2008 version of UIFSA, which contains provisions governing the family division's enforcement and modification of child-support orders issued by courts in foreign countries as well as other states.[2]  See generally 15B V.S.A. §§ 1101-1903; Baron v. McGinty, 2021 VT 6, ¶ 15, 214 Vt. 141, 252 A.3d 291 (discussing scope of UIFSA); 23 Am. Jur. 2d Desertion and Nonsupport § 74 (stating that 2008 version of UIFSA has been adopted in all fifty states).  "The primary aim of UIFSA is to ensure that states do not second-guess the support orders of other states, thereby opening the door to forum shopping and the proliferation of conflicting orders." OCS/Glenn Pappas v. O'Brien, 2013 VT 11, ¶ 29, 193 Vt. 340, 67 A.3d 916.

¶ 15.   The family division is Vermont's authorized UIFSA tribunal.  15B V.S.A. § 1103(a).  Here, the family division was acting as a "responding tribunal." Id. § 1102(23)-(24)

_____

[2]   Except where otherwise noted, we use the term "family division" to refer both to the family division of the superior court and the office of the magistrate.

(defining responding tribunal as authorized tribunal in state in which petition for support is filed). In that role, it was empowered to enforce and modify the Canadian order and to "determine the amount of any arrearages, and specify a method of payment." Id. § 1305(b); see also id. §§ 1611, 1615 (providing circumstances when Vermont tribunal may assume jurisdiction to modify foreign child-support order). UIFSA specifically authorizes the responding tribunal to perform a currency conversion when it is asked to enforce or modify a foreign order:

> If requested to enforce a support order, arrears, or judgment or modify a support order stated in a foreign currency, a responding tribunal of this State shall convert the amount stated in the foreign currency to the equivalent amount in dollars under the applicable official or market exchange rate as publicly reported.

Id. § 1305(f). The plain language of the statute authorized the family division to do what it did here: convert the amounts stated in the Canadian order into U.S. dollars in order to determine the amount of arrears father owed.[3]

¶ 16. OCS argues, however, that under the circumstances of this case the family division was required to calculate arrears using the conversion method applied by OCS when it began administratively enforcing the Canadian order. When mother petitioned OCS to enforce the Canadian order in 2013, OCS was authorized to "use any administrative procedure authorized by the law of this State" to enforce the order without having to register it. Id. § 1507(b). OCS argues that it was authorized to convert the amounts stated in the Canadian order by 15B V.S.A. § 1307(d), which contains language similar to § 1305(b):

> A support enforcement agency of this State that requests registration and enforcement of a support order, arrears, or judgment

---

[3] UIFSA contains special provisions applicable to foreign countries that have enacted the 2007 Hague Convention on International Recovery of Child Support. 15B V.S.A. §§ 1701-1713. Canada ratified the convention but its provisions did not take effect in Ontario until 2023, after the relevant time period in this case. See Int'l Recovery of Child Support and Family Maint. Convention Act, 2023, S.O. 2023, c. 9, Sched. 16, https://www.ontario.ca/laws/statute/23i09 [https://perma.cc/WJ6P-YUT2]. The provisions concerning convention countries therefore are not applicable to this appeal.

6

stated in a foreign currency shall convert the amounts stated in the foreign currency into the equivalent amounts in dollars under the applicable official or market exchange rate as publicly reported.

Although § 1307(d) does not expressly apply to administrative enforcement of an order without registration, the parties do not dispute that as a practical matter, OCS had to convert the amounts stated in the Canadian order into USD to collect support from father. Assuming without deciding that § 1307 governs administrative enforcement proceedings, we agree that OCS's decision to convert the child-support amounts using the exchange rate on the date of the Canadian order did not violate 15B V.S.A. § 1307(d), which does not specify any particular conversion method.[4]

¶ 17.    However, OCS's conversion of the amounts stated in the Canadian order for collection purposes could not and did not modify that order, which remained the controlling order for purposes of calculating arrearages. The official comments to § 1305(f) provide that "the language directing a conversion to a monetary equivalence in dollars is intended to make clear the equivalence is not a modification of the original order to an absolute dollar figure." Comment, 15B V.S.A. § 1305. The same principle applies to the currency conversion permitted by § 1307(d), which contains virtually identical language to § 1305(f) and must be construed accordingly. See Bd. of Trustees of Kellogg-Hubbard Libr., Inc. v. Lab. Rels. Bd., 162 Vt. 571, 574, 649 A.2d 784, 786 (1994) ("Statutes are considered to be in pari materia when they deal with the same subject matter or have the same objective or purpose."); In re Preseault, 130 Vt. 343, 346, 292 A.2d 832,

---

[4] Section 1307(d) does not expressly require OCS to make periodic adjustments to the conversion rate, though doing so could avoid the need for a subsequent recalculation if arrears accrue.

We observe that the two statutes appear to create competing conversions at the time a judicial proceeding begins: § 1307(d) says that OCS is to perform a conversion when it requests registration and enforcement of an order, and § 1305(f) says that the court is to perform a conversion "if requested to enforce" an order. We need not resolve this apparent conflict because OCS's argument is that the court should have deferred to its earlier administrative conversion.

7

834 (1972) ("Statutes in pari materia are to be construed with reference to each other as parts of one system."). The currency conversion is a practical prerequisite to collecting payment due; it does not modify the amounts stated in the original order. Accordingly, because the Canadian order was still controlling, the court was authorized by § 1305(f) to perform its own currency conversion when OCS asked the court to enforce the order and calculate arrears. In other words, the fact that OCS had performed a currency conversion when it was collecting payment under the order through wage withholding did not preclude the court from adjusting the conversion method in the later judicial proceeding.

¶ 18. For this reason, OCS's claim that the magistrate was barred from recalculating the obligation by 15 V.S.A. § 606(b) is unavailing. That provision states that "any support payment or installment shall become a judgment on the date it becomes due." Id. § 606(b). Applied here, this provision simply means that each support payment became a judgment for the amount due under the order; that is, the amounts stated in Canadian dollars. OCS's administrative conversion for collection purposes did not modify the support obligation due under the Canadian order to an absolute dollar judgment.

¶ 19. The statute leaves the precise method for converting the foreign currency amounts to the court's discretion. As explained in an article co-written by one of the UIFSA's drafters:

> The reason that no statutory formula [for currency conversion] was prescribed in the Act is straightforward. In the complex world of international finance and unpredictable monetary gyrations, the drafters believed that there are too many variables for a one-size-fits-all approach. Wide (and wild) swings in the value of a particular currency are better dealt with in an ad hoc manner by a trial court in the expectation that is the most likely approach to achieve rough equity. Hindsight has a better chance to provide the fairest result than does a doomed attempt at drafting prescience.

J. Sampson & B. Brooks, Unif. Interstate Fam. Support Act (2001) with Prefatory Note and Comments (with Still More Unofficial Annotations), 36 Fam. L.Q. 329, 389 n.46 (2002).[5]

¶ 20.    Section 1305(f) gives the court discretion to adjust the currency conversion to achieve an equitable result when determining whether a child-support obligation has been satisfied in a contested case.  It allows the court to factor in the fluctuating value of the currency to avoid giving one party a windfall.  This statutory discretion is designed to protect both obligor and obligee, as changes in the value of currency could result in either underpayment or overpayment in a given case.[6]

¶ 21.    OCS argues that interpreting §§ 1305(f) and 1307(d) in this manner will cause unpredictability and chaos in child-support enforcement.  We disagree.  The number of international child-support orders OCS is asked to enforce is surely small.  OCS could avoid future situations like the present one by applying periodic adjustments to its conversion rate or registering the foreign order at an earlier date.

¶ 22.    Here, the court considered the limited case law available from other states and ultimately determined that a yearly conversion rate was equitable under the circumstances.[7]  The

---

[5]  This article addressed § 304 of the 2001 version of UIFSA, which contained virtually identical provisions governing currency conversions as the 2008 version; its reasoning therefore remains persuasive.

[6]  As discussed below, however, the court erred in ordering repayment to father under the circumstances of this case.  See infra, ¶ 23.

[7]  Courts in other jurisdictions have taken a variety of approaches to foreign currency conversion in the context of support orders.  See In re Marriage of Shortway, 423 P.3d 270, 276 (Wash. Ct. App. 2018) (holding that exchange rate be determined on date of each original payment for daycare-expense arrearages owed under Canadian order); Hixson v. Sarkesian, 123 P.3d 1072, 1075 (Alaska 2005) (stating that for purpose of deciding whether to modify support obligation owed by obligor whose income was in Swiss francs, "court could use an average currency exchange rate over an appropriate period, or a rate on a specified date"); In re Marriage of Shafaghiha, No. B156614, 2003 WL 21205989, at *11 (Cal. Ct. App. May 23, 2003) (affirming trial court's order that husband pay wife her share of his Iranian pension using "rate of exchange in effect on the first day of each year" (quotation marks omitted)).  None of these decisions interpreted the UIFSA provisions at issue here.

court was evidently attempting to calculate arrears in a manner that more accurately reflected the actual value of the Canadian dollar relative to the U.S. dollar over the years while minimizing the administrative burden for OCS. We cannot say that its selection of a yearly conversion method was an abuse of the discretion afforded by the statute.[8] We accordingly affirm the magistrate's determination that father did not owe arrears as a result of the updated exchange-rate methodology.

¶ 23. However, we conclude that under the circumstances of this case, it was error for the magistrate to also order mother to repay father for overpayments resulting from the recalculation. Although OCS began collecting payments from father using its chosen exchange-rate method in 2015, father never objected to administrative collection of the amounts determined by OCS. He never moved to modify his support obligation or formally challenged OCS's chosen exchange-rate method in court during the period when payments were collected. Mother therefore had no reason to think that the amounts she was receiving each month might be excessive. It was not until 2021, when father opposed OCS's request for arrears, that he raised his claim that OCS should have used a different exchange-rate method. Even then, he did not move for reimbursement of the alleged overpayments. Requiring mother to repay father at this point is inequitable. Instead, because mother had sole custody, the overpayment resulting from the change in exchange-rate methodology should have been equitably deemed to be a gratuity to the child. Cf. LaMothe v. LeBlanc, 2013 VT 21, ¶ 28, 193 Vt. 399, 412, 70 A.3d 977 (explaining that Social Security benefits that exceed noncustodial parent's support obligation are properly viewed as gratuity to child).

---

[8] Father argued below and at oral argument that the court and OCS ought to have used the exchange rate on the date each payment was due. See Barry J. Brooks, International Family Support: Currency Conversion, E. Reg'l Interstate Child Support Ass'n, https://ericsa.org/wp-content/uploads/2014/11/Barry-Brooks-Currency-Conversion-paper.pdf [https://perma.cc/R52C-SB9S] (recommending use of payment date for currency conversions as fairest approach to both parties in child support cases). Father did not cross-appeal, so we do not consider this argument here.

¶ 24.    For this reason, although we agree with the family division that the magistrate had discretion to use a different exchange-rate methodology than OCS under UIFSA, we reverse the portion of the family division's order that affirmed the magistrate's November 9, 2022 order requiring mother to repay father $11,892.13, and vacate the November 9, 2022 order.  The family division's order is otherwise affirmed.

The portion of the family division's order affirming the magistrate's order requiring mother to repay father is reversed and the magistrate's November 9, 2022 order is vacated.  The family division's order is otherwise affirmed.

FOR THE COURT:

_____

Associate Justice