2003 VT 87A

## In re Town of Killington

[838 A.2d 98]

No. 02-365

Present: Amestoy, C.J., Johnson and Skoglund, JJ., and Allen, C.J. (Ret.) and Gibson, J. (Ret.), Specially Assigned

Opinion Filed October 24, 2003

*Ellen Mercer Fallon* and *Abby C. Moskovitz* of *Langrock Sperry & Wool, LLP*, Middlebury, for Appellant.

*William H. Sorrell*, Attorney General, and *Charles L. Merriman*, Special Assistant Attorney General, Montpelier, for Appellee.

¶ 1. **Johnson, J.** This appeal arises because the Town of Killington failed to meet a filing deadline to the Valuation Appeal Board when it appealed its property valuation for Act 60 purposes. After its appeal was dismissed, Killington appealed to the Rutland Superior Court, arguing that the Board should have considered, pursuant to V.R.A.P. 4, its eligibility for a filing extension for excusable neglect before dismissing its claim. The superior court agreed with the State that the filing deadline could not be extended and dismissed the claim. Although Killington is correct that V.R.A.P. 4 applies to its administrative appeal, we affirm the decision below because Killington failed to show excusable neglect as a matter of law.

¶ 2. Act 60 equalizes education expenditures per student across Vermont through a state-wide fund comprised of a general state support grant and local property tax revenue. To begin calculating each municipality's required contribution, the Director of Property Valuation in the Department of Taxes assesses the aggregate and fair market value of a municipality's real property. The Director then calculates each municipality's equalized education property tax grand list and coefficient of

dispersion from this data, notifying the municipalities of these values each year by January 1.* 32 V.S.A. § 5406.

¶ 3. Upon receipt, a municipality has thirty days to file a petition with the Director of the Division of Property Valuation and Review for a redetermination of its property tax grand list and coefficient of dispersion. 32 V.S.A. § 5408(a). Within thirty days of receiving the Director's redetermination, a municipality may again appeal to the Valuation Appeal Board. 32 V.S.A. § 5408(c). The statute at issue in this case, 32 V.S.A. § 5408(c), provides the procedure for appeals to the Valuation Appeal Board.

¶ 4. On December 27, 2000, the Director of Property Valuation and Review determined Killington's 2001 equalized education property value and coefficient of dispersion. Killington timely petitioned the Director of the Division of Property Valuation for a redetermination of these figures, which the Director issued on June 4, 2001. Although Killington intended to appeal the Director's redetermination to the Valuation Appeal Board pursuant to § 5408(c), an "office procedure breakdown" within its law firm prevented it from filing this appeal within the statutory thirty-day limit. On July 16, 2001, twelve days after the thirty-day limit, Killington filed its notice of appeal to the Valuation Appeal Board accompanied by a motion for an extension of time to file the appeal.

¶ 5. The Valuation Appeal Board dismissed Killington's motion on the ground that § 5408(c) does not authorize it to grant extensions of time to file appeals. Killington appealed to the Rutland Superior Court, arguing that § 5408(c) authorizes extensions for excusable neglect by first noting that § 5408(c) proceedings derive their procedure from the Vermont Administrative Procedure Act (APA). Any proceeding subject to the APA is also subject to the provisions in V.R.C.P. 74, which makes appeals under its jurisdiction also subject to V.R.A.P. 4. Based on this analysis, Killington contends that courts may consider V.R.A.P. 4 requests for filing extensions for excusable neglect on appeals brought pursuant to 32 V.S.A. § 5408(c).

¶ 6. Both the State and Killington filed motions for summary judgment in Rutland Superior Court on the issue of whether a municipality can receive a V.R.A.P. 4 extension for excusable neglect under 32 V.S.A.

---

* 32 V.S.A. § 5401 defines a municipality's coefficient of dispersion as the result of the following process: (A) determine the ratio of assessment to the selling price of each fair market sale of real estate; (B) determine the mean assessment ratio of all fair market sales of real estate; (C) determine the absolute deviation of each assessment ratio from the mean; (D) determine the mean absolute deviation. The coefficient of dispersion is the mean absolute deviation expressed as a percentage of the mean assessment ratio.

§ 5408(c). The court granted the State's motion for summary judgment, finding that V.R.C.P. 74, the necessary link to V.R.A.P. 4, is "clearly applicable only to appeals to the superior court *from* a decision of a governmental agency and not to appeals within or to a governmental agency." This appeal followed.

¶ 7. Whether a municipality can obtain an extension for excusable neglect on appeals pursuant to 32 V.S.A. § 5408(c) is a question of law subject to de novo review. See *Jordan v. State*, 166 Vt. 509, 511, 702 A.2d 58, 60 (1997). The authority to issue such an extension derives from V.R.A.P. 4, under which a court may extend the time for filing the notice of appeal "for excusable neglect, upon motion and notice, if request therefore is made within 30 days after the expiration of the [30-day appeal period]." The text of V.R.C.P. 74(b) indicates that these provisions apply to any proceeding within its jurisdiction:

> (b) **Notice of Appeal; Appellee's Appearance.** An appeal or review under this rule shall be taken by filing with the clerk of the administrative body . . . a notice of appeal in the manner and within the time provided in Rules 3 and 4 of the Rules of Appellate Procedure.

V.R.C.P. 74(b). The superior court ruled that municipalities cannot obtain V.R.A.P. 4 extensions for excusable neglect in 32 V.S.A. § 5408(c) appeals because V.R.C.P. 74 is applicable only to appeals to superior courts, not to appeals to administrative agencies. We agree with Killington that V.R.C.P. 74 and V.R.A.P. 4 can govern appeals to administrative agencies as well as appeals to a superior court.

¶ 8. Appeals governed by the APA must follow the procedure delineated in V.R.C.P. 74(a):

> (a) **Applicability.** . . . this rule shall also apply when any party is entitled by statute to seek review of, or appeal from, a decision in a proceeding determined by any other administrative officer or tribunal and the appeal or review is subject to procedure provided for state agencies covered by the Administrative Procedure Act (chapter 25 of Title 3 V.S.A.) or to procedure provided in this rule.

Appeals brought under 32 V.S.A. § 5408(c) meet Rule 74's applicability standards because they are subject to the procedure delineated in the APA:

(c) A municipality, within 30 days of the director's redetermination, may appeal the redetermination to the valuation appeal board. . . . The appeal shall be heard de novo in the manner provided by chapter 25 of Title 3 for the hearing of contested cases.

32 V.S.A. § 5408(c). Because we apply the plain meaning of a statute where the language is clear and unambiguous, we conclude that V.R.C.P. 74 applies not only to appeals to the superior court, but also to appeals to the Valuation Board under § 5408(c). *In re Verizon New England Inc.*, 173 Vt. 327, 335, 795 A.2d 1196, 1202 (2002) (holding that the Court applies the plain language of a statute where its meaning is unambiguous).

■ ¶ 9. The superior court based its decision on a misinterpretation of Rule 74's title, "Appeals From Decisions of Governmental Agencies," and accompanying Reporter's Notes. The title does not limit V.R.C.P. 74's applicability based on the destination of the appeal. Additionally, although the 1981 Reporter's Notes do state that "[t]he rule now applies . . . [where] the review or appeal is to be decided in the superior court," they continue in a subsequent paragraph to maintain "[t]he rule also specifically applies where legislation brings review of a proceeding under the APA." Reporter's Notes — 1981 Amendment, V.R.C.P. 74. These notes thus support our conclusion that the procedural provisions of V.R.C.P. 74 and V.R.A.P. 4 apply to appellate proceedings under 32 V.S.A. § 5408(c).

■ ¶ 10. The State makes a number of arguments in support of a contrary interpretation of the statute that we do not find persuasive. First, the State argues that the Legislature must have meant to exclude V.R.C.P. 74, and therefore V.R.A.P. 4, from subsection (c) of § 5408 because no mention is made of those rules, while V.R.C.P. 74 is explicitly mentioned in subsection (d). It is true that in contrast to subsection (d), subsection (c) invokes the APA rather than directly referring to V.R.C.P. 74:

(c) A municipality, within 30 days of the director's redetermination, may appeal the redetermination to the valuation appeal board. . . . The appeal shall be heard de novo in the manner provided by chapter 25 of Title 3 for the hearing of contested cases.

(d) A municipality or the division of property valuation and review may appeal from a decision of the valuation appeal board to the superior court of the county in which the municipality is located. The superior court shall hear the matter de novo in the

manner provided by Rule 74 of the Vermont Rules of Civil Procedure.

32 V.S.A. § 5408(c)-(d). Subsection (d) relates exclusively to courts, and therefore V.R.C.P. 74 alone provides its appellate procedure. Subsection (c), by contrast, controls appeals to an administrative body, and thus derives its procedure from the less formal provisions of the APA in addition to V.R.C.P. 74. See *Town of Bridgewater v. Dep't of Taxes*, 173 Vt. 509, 511, 787 A.2d 1234, 1237-38 (2001) (mem.) (noting that the APA develops the record of administrative hearings in a more informal manner); see also 3 V.S.A. § 807; 3 V.S.A. § 809; 3 V.S.A. § 812. Because V.R.C.P. 74 applies to all appeals subject to the APA, the Legislature had no reason to refer explicitly to Rule 74 in subsection (c) once it had already invoked the APA as the governing procedure for subsection (c) hearings. The different language in (c) and (d) thus reflects the fact that administrative bodies require different, administrative-specific procedure beyond the provisions of V.R.C.P. 74; it does not support a legislative intent to exclude V.R.C.P. 74 and V.R.A.P. 4 from controlling proceedings under subsection (c).

¶ 11. The State next compares the language in § 5408(c) to the language in 32 V.S.A. § 4461, arguing that § 4461's specific reference to V.R.C.P. 74 substantiates a legislative intent to exclude V.R.C.P. 74 from governing § 5408(c) appeals:

> (a) A taxpayer or the selectboard members of a town aggrieved by a decision of the board of civil authority under subchapter 1 of this chapter may appeal the decision of the board to either the director or the superior court . . . . The appeal to either the director or the superior court shall be commenced by filing a notice of appeal pursuant to Rule 74 of the Vermont Rules of Civil Procedure . . . .

32 V.S.A. § 4461(a). Although this statute better parallels § 5408(c) than § 5408(d) because it addresses administrative proceedings, the structure of § 4461 is explained by the organization of the chapter in which it occurs. Instead of initially separating appeals to a board and those to a superior court and providing all of their procedural rules in each subsection, as the Legislature did in § 5408, the Legislature refers generally to appeals to both authorities in § 4461 and later delineates the specific procedure for appeals to the administrative body in § 4466: "Unless expressly waived by all parties to the appeal, the provisions of chapter 25 of Title 3 shall govern all proceedings before an appraiser except where inconsistent with this subchapter." The Legislature thus used V.R.C.P. 74

in § 4461 to delineate the procedure for superior court appeals, because § 4466 later establishes V.R.C.P. 74's jurisdiction over its administrative proceedings.

■ ¶ 12. The State also argues that its interpretation is supported by our prior cases. First, it asserts that *Eastcoast Home Loans*, a recently decided, unpublished memorandum decision, requires us to affirm the decision below. In *Eastcoast*, we resolved a direct statutory conflict, ruling that the statute specifically written for the cause of action and its fifteen-day time limit for appeals superseded the thirty-day time limit of V.R.A.P. 4. See *Eastcoast Home Loans, Inc. v. Dep't of Banking, Ins., Sec. & Health Care Admin.*, No. 2002-011, at 2 (Vt. Apr. 17, 2002) (mem.) (interpreting 8 V.S.A. § 2213). We have applied this principle of statutory interpretation only in cases such as *Eastcoast* where two statutes directly contradict one another. *State v. Cooley*, 135 Vt. 409, 411-12, 377 A.2d 1386, 1387-88 (1977) (ruling that for post-conviction appeals, 13 V.S.A. § 7401 — a statute specific to post-conviction relief and providing thirty days to appeal — controls over V.R.Cr.P. 32(d), a general procedural statute arguably allowing appeals at any time); *Pearson v. Pearson*, 169 Vt. 28, 35-36, 726 A.2d 71, 76 (1999) (holding that in a divorce proceeding, 15 V.S.A. § 751(a) — a statute specific to divorce proceedings and explicitly making "[a]ll property owned by either or both of the parties" subject to jurisdiction of the court — supersedes 27 V.S.A. § 101, a general creditor statute that exempts homesteads not exceeding $75,000.00 in value from judicial attachment); *State v. O'Connell*, 135 Vt. 182, 184, 375 A.2d 982, 983 (1977) (ruling that in hospitalization order appeal cases, 18 V.S.A. § 7112 — which provides that hospitalization orders shall be appealed from district court to the superior court of the county where hospital is located — controls over 4 V.S.A. § 443, a more general procedural statute providing that appeals from district court may be taken only to the Supreme Court). In this case, § 5408(c) provides a thirty-day time limit for filing appeals, while the subsection is silent on the issue of whether a municipality can obtain V.R.A.P. 4 filing extensions aside from its reference to the APA. As a result, there is no direct conflict between the statutes, making the statutory principles enumerated in *Eastcoast* inapplicable to this case.

■ ¶ 13. In its second argument, the State asserts that *F.M. Burlington Co. v. Comm'r of Taxes*, 134 Vt. 515, 365 A.2d 531 (1976), requires the Court to affirm the decision below. *F.M. Burlington* stands for the principle that a more generally applicable, later-enacted statute cannot supersede an earlier enacted statute dealing with a more specific subject.

*Id.* at 518-19, 365 A.2d at 532-33. This rationale cannot affect our decision in the present case because the Legislature enacted the more generally applicable V.R.C.P. 74 and V.R.A.P. 4 *before* passing 32 V.S.A. § 5408(c). We presume that the Legislature passes and amends more topically focused laws such as § 5408(c) with knowledge of existing law. See, e.g., *In re Danforth*, 174 Vt. 231, 238, 812 A.2d 845, 851 (2002) (ruling that the Legislature is presumed to make changes in light of existing law); *State v. Read*, 165 Vt. 141, 147, 680 A.2d 944, 948 (1996) (noting that the Court will presume that the Legislature makes changes in the law in light of relevant judicial precedents and with knowledge of prior legislation on the same subject). Because we must assume that the Legislature knew of V.R.C.P. 74, V.R.A.P. 4, and the provisions in the APA when implementing the APA as procedure for § 5408(c) appeals, we must conclude that the Legislature intended to allow extensions for excusable neglect in § 5408(c) appeals.

¶ 14. The State contends, however, that applying V.R.A.P. 4 extensions for excusable neglect to § 5408(c) appeals would enlarge Killington's substantive rights. The Supreme Court of the United States explained the difference between substantive rights and procedural matters in *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438 (1946), defining procedural relief as relating "merely to the manner and the means by which a right to recover . . . is enforced." *Id.* at 446 (internal quotations omitted). Rules governing time for appeals relate to the process of asserting a right rather than to the creation of a new right, and thus qualify as procedure. See *Hart v. Knox County*, 171 F.2d 45, 46 (6th Cir. 1948) (stating that rule governing time limit for filing appeals "does not affect substantive rights, but relates to practice and procedure").

¶ 15. The Vermont Legislature acknowledged that time limits for filing appeals are procedural matters by enacting 12 V.S.A. § 2383. This statute gives the Supreme Court the broad authority to "provide for extension of the time for appeal to allow a cross appeal or for cause." 12 V.S.A. § 2383. Because the Legislature provides in 12 V.S.A. § 1 that the Supreme Court cannot "abridge, enlarge or modify any substantive rights of any person provided by law," it categorized extensions for excusable neglect as procedural remedies rather than substantive rights. 12 V.S.A. § 1. Hence, applying V.R.A.P. 4 to § 5408(c) appeals does not affect the substantive rights of the parties in this case, nor does it jeopardize the execution of Act 60.

¶ 16. This Court applies federal case law as persuasive authority to clarify the excusable neglect standard under V.R.A.P. 4 because the rule is substantially identical to Fed. R. App. P. 4. *State v. Felix*, 153 Vt. 170,

171, 569 A.2d 493, 494 (1989). The United States Supreme Court has described the federal standard for excusable neglect as an "elastic concept" that requires an equitable determination. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). In *Pioneer*, the Court enunciated factors for evaluating a party's claim of excusable neglect under a number of federal rules including Fed. R. App. P. 4. These factors include: "the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. While this standard ostensibly represents a modest liberalization of the "excusable neglect" concept in the federal rules, several federal circuit courts of appeal have recognized that the post-*Pioneer* threshold remains high. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 370 (2d Cir. 2003) (collecting cases); *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250-51 (2d Cir. 1997) (per curiam) (observing that the equities will rarely if ever favor a party who fails "to follow the clear dictates of a court rule" and holding that where "the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary case, lose under the *Pioneer* test"), *cert. denied*, 522 U.S. 1117 (1998). Despite the flexibility of the standard and the existence of a four-factor test, the appropriate focus is on the third factor: the reason for delay, including whether it was within the reasonable control of the movant. *Silivanch*, 333 F.3d at 367; *Graphic Communications Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) (observing that, of the four *Pioneer* factors, the excuse given for the late filing "must have the greatest import"). Federal courts emphasize the third factor because, "[i]n the typical case, the first two *Pioneer* factors will favor the moving party: delay always will be minimal in actual if not relative terms, and the prejudice to the non-movant will often be negligible . . . ." *Silivanch*, 333 F.3d at 366. Additionally, the absence of good faith in these cases is rarely in issue. *Id.*

¶ 17. Many federal courts have taken what we think is an appropriately hard line when it comes to determining when neglect that stems from factors totally within the control of a party or its attorney is "excusable." *United States v. Hooper*, 43 F.3d 26, 28-29 (2d Cir. 1994) (per curiam) (affirming denial of Rule 4(b) extension where delay resulted from legal assistant's ignorance of the rules); see also *Gibbons v. United States*, 317 F.3d 852, 855 (8th Cir. 2003) (affirming denial of extension where solo practitioner failed to timely file because of vacation followed by temporary illness); *Graphic Communications*, 270 F.3d at 8 (affirming denial of

extension because late filing was result of ignorance of the law and "inattention to detail"); *Canfield*, 127 F.3d at 250 (affirming denial of extension when attorney's late filing was a result of his personal involvement in other business); *Jin v. Metropolitan Life Ins. Co.*, 2003 WL 21436211 (S.D.N.Y. June 20, 2003) (denying extension because neglect occasioned by changes in attorney's office personnel and location was not "excusable"). Notwithstanding the flexibility of the "excusable neglect" concept, its application to cases like the instant one must remain strict lest there be a de facto enlargement of the appeal-filing time to sixty days. As the Second Circuit Court of Appeals explained, "the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced — where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of [the time] bar." *Silivanch*, 333 F.3d at 368. Therefore, applying V.R.A.P. 4 to 32 V.S.A. § 5408(c) appeals, while maintaining a strict, but not inflexible, standard for excusable neglect under the rule will affect the timing of Act 60's administrative mechanism only in rare cases.

¶ 18. Moreover, in the exceptional case that a municipality can prove excusable neglect, V.R.A.P. 4 requires parties to file for extensions within thirty days of the original filing deadline. Act 60's provisions anticipate these limited delays by not providing a specific date for the Commissioner's final tax determination when a municipality has petitioned for reconsideration. Instead, 16 V.S.A. § 4027(d) states that in this situation the Commissioner will issue the final numbers and tax percentages within ten days of receiving the final property tax grand list and coefficient of dispersion. Thus, if a municipality obtains a filing extension, Act 60's procedural mechanism can still proceed according to plan.

¶ 19. In this case, Killington's excuse for failing to file a timely appeal is that an internal office procedure breakdown in its counsel's office resulted in the failure to calendar the appeal deadline date, and thus the late filing. As indicated by the case law discussed above, this type of inattention to detail is not enough to extend the filing time for appeal under V.R.A.P. 4. Hence, there is no point in remanding this matter for the Director of the Division of Property Valuation to make an initial determination as to whether excusable neglect existed in this case. As a matter of law, it did not. We therefore affirm the superior court's dismissal of the appeal, albeit on different grounds.

*Affirmed.*