STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Dodge Farm Community, LLC, Concept Plan | } | Docket No. 155-7-07 Vtec |
| (Appeal of Burns) | } | |
| | } | |

<u>Decision and Order on Motion for Reconsideration</u>

Appellants Catherine and Legrand Burns appealed from a decision of the Development Review Board (DRB) of the Town of Berlin, granting concept plan approval to Appellee-Applicant Dodge Farm Community, LLC (Applicant) for a proposed Planned Unit Development. Appellants are represented by L. Brooke Dingledine, Esq.; Applicant is represented by Richard W. Darby, Esq. and Christopher J. Nordle, Esq.; the Town is represented by Robert Halpert, Esq.; and Interested Persons Romeo J. and Valerie D. Cyr have appeared and represent themselves.

Appellants request that the Court reconsider its decision on cross-motions for summary judgment, which ruled that Applicant may apply for its project as a planned unit development (PUD). See In re: Dodge Farm Community, LLC, Concept Plan, Docket No. 155-7-07 Vtec (Vt. Envtl. Ct. Mar. 24, 2008) (March 2008 Decision). As noted in the March 2008 Decision, concept plan approval merely allows an applicant to proceed before the DRB with its application for the project; it does not constitute an approval of any aspect of the project under the substantive standards applicable to it. Compare Subdivision Regulations § 310 with §§ 320, 330.

A motion to reconsider or V.R.C.P. 59(e) motion to alter or amend a judgment "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.1 (construing the analogous federal rule 59). Such a

1

motion may be used to "correct manifest errors of law or fact" on which the judgment is based, to allow the moving party to present newly-discovered or previously-unavailable evidence, to prevent manifest injustice, or to respond to an intervening change in the controlling law. Id.; and see In re: Bouldin Camp – Noble Road, Docket No. 278-11-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. Sept. 13, 2007); In re: Boutin PRD Amendment, Docket No. 93-4-06 Vtec, slip op. at 1-2 (Vt. Envtl. Ct. May 18, 2007).

Appellants have not presented any manifest error or any newly-discovered or previously-unavailable evidence, and have not alleged any manifest injustice or any intervening change in the controlling law. Rather, Appellants argue that the March 2008 Decision misinterpreted the Zoning Bylaws. By this argument Appellants simply attempt to relitigate the issue decided on summary judgment: whether an applicant may apply for a PUD in a district that lists the PUD's component uses as allowed uses, but does not list PUDs as a separate allowed use category. As discussed fully in the March 2008 Decision, Appellants' proffered interpretation does not account for the lack of reference to PUDs in any district, would render § 4.10(D)(2) mere surplusage, and would lead to absurd results. March 2008 Decision at 5-6. To the extent that it argues or reargues the issues addressed in the March 2008 Decision, Appellants' Motion for Reconsideration is DENIED.

Appellants also argue that the Court relied on disputed material facts when considering the motions for summary judgment, and that therefore the motions should have been denied. In particular, Appellants object to the Court's description of the proposed project as containing only single-family and two-family houses, and object to the Court's use of a prior version of the zoning bylaws to assist it in interpreting the current bylaw amendments of the relevant section now governing PUDs.

In the March 2008 Decision, the Court made the following findings about the proposal as it existed at the sketch plan stage, based upon the Applicant's project narrative and other application materials:

2

Applicant proposes two clusters of housing on the property, with the remainder largely proposed to remain in agriculture or as forested land. One cluster of housing units, labeled "Cluster B," is proposed to be located in the Rural Residential and Light Industrial zoning districts, in the northeastern area of the Northerly Project Property. Cluster B is proposed to contain 30 housing units, with access to Airport Road by an approximately 1500-foot-long access roadway. A plant nursery is proposed for the portion of the Northerly Project Property near Airport Road, with several horse or walking trails extending through the property.

The other cluster of housing units, labeled "Cluster C," is proposed to be located in the Highland Conservation zoning district, near the westerly boundary of the Southerly Project Property. Thirty-four housing units are proposed for Cluster C, with access to Scott Hill Road by an approximately 1200 foot long access roadway. Most of the housing units in Cluster C are proposed to surround a central "green" and a "common house," with seven other units located farther to the south near a garden area. A trail or path for walking or horses is also proposed for the Southerly Project Property.

Appellants argue that the Court "assumed" that the proposed PUD would be composed of only single-family and two-family houses, but that the types of houses proposed for the PUD is a disputed material fact. Appellants argue that the proposal was originally for "a multi-family dwelling project," and that the description of the project as being composed only of single- and two-family dwellings only appeared in Applicant's materials submitted with the motion for summary judgment. Appellants' Mot. for Reconsideration at 3.

As the March 2008 Decision discussed, concept plan approval is an informal process intended to acquaint the DRB with the design scheme, and to allow the DRB and the applicant to exchange ideas and suggestions, as no party is bound by the presentations, comments, or suggestions made at this initial stage of the development process. Subdivision Regulations § 300.

Consistent with the concept plan approval framework, Dodge Farm initially submitted an application to elicit the DRB's comments regarding its project, including as to whether multi-family dwelling units could be allowed in these zoning districts. See

3

Concept Plan Narrative at 3, contained in Applicant's Ex. F. The DRB concluded, at Finding 14 in its concept plan decision, that multi-family dwelling units were not allowed in these zoning districts, and proceeded to consider the project as a Planned Residential Development under the bylaws' authority for Planned Unit Development. This appeal was taken from that decision.

Applicant's narrative description of the project after the DRB's decision specifically limited the proposed clustered dwelling units to "a combination of single and/or two-family dwelling units," updating the description of the project as it had evolved before the DRB and as governed by the DRB's ruling that multi-family dwellings are not allowed in these districts. See Applicant's Statement of Undisputed Facts, filed December 12, 2007, at ¶19.

The Court's decision did not give any kind of approval, even concept plan approval, to the project as currently described by Applicant. The merits of concept plan approval, and any disputed facts related to the merits of concept plan approval, remains for resolution with regard to Question 1 of the Statement of Questions of this appeal. Rather, all that the March 2008 Decision decided was the legal question that Applicant's project could be considered as a PUD if all of its component uses were allowed uses in their respective zoning districts. This decision did not depend upon any disputed facts.

Nor did the Court's use of the prior (2002) zoning bylaws in interpreting the current bylaws rely on any disputed facts, or raise an issue not raised in the appeal or the motions for summary judgment. The prior zoning bylaws are not a disputed document; the Court could have asked the Town to provide a copy, even though the primary parties had not provided one for the Court's use. Instead, as the Town was not taking an active role, the Court disclosed in the March 2008 Decision that it had obtained the necessary copy of the prior bylaws from one of its closed files.

The prior bylaws were used only in the analysis of the primary issue raised by the parties in this appeal: how to interpret or account for the new bylaws' residual references

4

to Planned <u>Residential</u> Developments, even though the regulatory scheme of the new bylaws now focuses on Planned <u>Unit</u> Developments. See, <u>e.g.</u>, <u>In re Town of Killington</u>, 176 Vt. 60, 67, 2003 VT 87A, ¶ 13 (2006) and cases cited therein (legislative body is presumed to make changes in law in light of prior legislation).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Reconsideration is DENIED.

Prior to the briefing of the summary judgment motions, the parties had agreed that the merits of the concept plan, that is, Question 1 of the Statement of Questions, should not be litigated separately but should be folded in to the following stages of the application, as the plan itself may be expected to change during the next stage of review. Accordingly, a telephone conference has been scheduled (see enclosed notice) to discuss the next steps in this matter, including whether mediation would be useful at this stage of the proceedings, or whether this appeal may be closed with leave to the parties to address the merits of the project if any appeal is filed of any later stage of the plans for this property.

Done at Berlin, Vermont, this 3rd day of July, 2008.

_____
Merideth Wright
Environmental Judge