NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 51

Nos. 2020-154 & 2020-172

In re K.S., Juvenile

Supreme Court

On Appeal from
Superior Court, Franklin Unit,
Family Division

June Term, 2021

Howard E. Van Benthuysen, J.

Sarah Star, Middlebury, for Appellant Mother.

Thomas J. Donovan, Jr., Attorney General, and Benjamin D. Battles, Solicitor General,
Montpelier, for Appellee Department for Children and Families.

Matthew Valerio, Defender General, and Marshall Pahl, Deputy Defender General, Montpelier,
for Appellee Juvenile.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.     **REIBER, C.J.**   In these consolidated appeals, mother challenges decisions by the family division of the superior court denying mother's motions for an extension of time to file a notice of appeal and to vacate the order terminating her parental rights to K.S., and concluding that K.S. is not an Indian child for purposes of the Indian Child Welfare Act. We affirm.

I. Background

¶ 2.     K.S. was born in February 2018. In March 2018, a relative reported that mother had "tossed" K.S. onto a bed during a family argument and that father had used excessive physical discipline on K.S.'s older brother. K.S. was later found to have a buckle fracture on her wrist,

which parents were unable to explain. At the time, the family was living with three other adults in a hotel room. The Department for Children and Families (DCF) sought and obtained emergency custody of K.S. and her brother, and filed petitions alleging that they were children in need of care or supervision (CHINS). Mother and father later stipulated to the merits of the CHINS petitions. In June 2019, DCF filed petitions to terminate the parental rights of both parents to K.S. At separate hearings in June and October 2019, father and mother each stipulated to termination and entered into post-adoption contact agreements with the foster parents. At the October hearing, mother testified that she understood that she was permanently giving up her parental rights, that her decision was voluntary, and that she believed the decision was in K.S.'s best interests. The court accepted the parties' stipulations and granted the termination petitions.

¶ 3.     In December 2019, mother hired a new attorney, who filed a motion for relief from the termination order pursuant to Vermont Rule of Civil Procedure 60(b). Mother alleged that the attorney who represented her at the relinquishment hearing had rendered ineffective assistance, that the underlying facts did not support termination of mother's parental rights, and that her relinquishment was involuntary because she did not understand the proceedings. The family division held a hearing and on March 10, 2020, issued an order denying the motion. It found that mother's relinquishment was knowing and voluntary and not the result of coercion by DCF or the foster parents. The court concluded that it was not required to conduct a separate analysis of the factors in 33 V.S.A. § 5114(a), the so-called best-interests factors, when mother voluntarily relinquished her rights. It further found that mother had failed to establish that her counsel's performance was ineffective.

¶ 4.     On April 2, 2020, K.S. was adopted by the foster parents with whom she had been living for most of her life.

¶ 5.     On April 10, 2020, mother filed a notice of appeal from the court's decision denying her Rule 60 motion. This Court dismissed the appeal as untimely because it was filed more than

2

thirty days after the judgment. We directed mother's attention to Vermont Rule of Appellate Procedure 4(d), which permits the superior court to extend the appeal period for excusable neglect or good cause shown.

¶ 6. Mother then filed a motion for an extension of time with the family division of the superior court. The family division found that mother failed to demonstrate good cause or excusable neglect for the untimely filing and denied the motion. Mother filed a timely notice of appeal from this order.

¶ 7. While her appeal from the extension-denial order was pending, mother filed a second motion to vacate the termination order. The family division concluded that it lacked jurisdiction to consider the motion because K.S. had been adopted, and stated that even if it had jurisdiction, it would deny mother's motion. Mother filed a timely notice of appeal from this order as well. We granted mother's request to consolidate the appeals for review.

¶ 8. Mother filed her initial appellate brief in August 2020. She argued that the family division abused its discretion by denying her request for an extension of time to appeal, erred in concluding that it lacked jurisdiction to entertain her second Rule 60 motion, erred in terminating parental rights based on her voluntary relinquishment without independently considering K.S.'s best interests, and failed to ascertain that her relinquishment was knowing and voluntary. She argued that she received ineffective assistance of counsel at the relinquishment hearing. Finally, she claimed that the termination order had to be reversed because father had reported to DCF that K.S. had Cherokee heritage, and the court had failed to give notice to the Cherokee tribes or to apply the substantive provisions of the Indian Child Welfare Act (ICWA).

¶ 9. After mother filed her brief, DCF sent notice of K.S.'s potential tribal membership and the pending termination proceeding to the three federally recognized Cherokee tribes, as well as the Regional Director of the Bureau of Indian Affairs. DCF asked this Court to stay mother's

3

appeal until DCF received a response. Mother opposed the stay. In September 2020, we remanded the matter for the family division to consider the applicability of the ICWA.

¶ 10. On remand, mother filed an "omnibus motion" in which she: (1) argued that the court should vacate the termination order because DCF's initial failure to comply with the ICWA rendered the judgment void; (2) challenged the court's conclusion that it lacked jurisdiction to address her second Rule 60 motion; (3) asked the court to appoint new counsel for herself and K.S. and to revoke K.S.'s consent to termination on the ground that K.S.'s attorney had a conflict of interest; (4) requested parent-child contact; (5) asked the court to direct DCF to comply with the ICWA; (6) requested genetic material from K.S. and "plenary" discovery to investigate the underlying allegations in the CHINS proceeding; (7) challenged the CHINS merits stipulation; and (8) sought judgment on the pleadings or relief under Rule 60.

¶ 11. The court rejected mother's claim that the ICWA notice violation required automatic reversal of the termination order and reinstatement of parental rights or parent-child contact. The court denied mother's motions for judgment on the pleadings, for relief under Rule 60, and to revoke K.S.'s consent to termination, concluding that these matters were outside of the scope of the remand and that it lacked jurisdiction to grant relief under Rule 60 because K.S. had been adopted. It ruled that mother's motion to assign new counsel was moot because new counsel had been assigned. The court denied mother's motion for discovery regarding the CHINS proceeding as beyond the scope of the remand. It also denied her request to subpoena out-of-state records and to collect K.S.'s genetic material as not required under the ICWA. However, it granted discovery of records related to the ICWA proceeding and indicated that it would set a hearing to determine whether K.S. was an Indian child.

¶ 12. The court held a hearing on the applicability of the ICWA over two days in December 2020 and February 2021. It issued a decision in March 2021 finding that the notices sent by DCF complied with the ICWA, that DCF exercised due diligence, and that the tribes had

4

responded that K.S. was not an Indian child of their tribes. The court concluded that K.S. was not an Indian child to whom the ICWA applied. Mother filed a timely notice of appeal from this order. This Court consolidated the new appeal with the two previous appeals.

## II. Mother's Claims on Appeal

### A. Motion for Extension of Time to Appeal

¶ 13. Mother first argues that the family division abused its discretion in denying her motion to extend the time to appeal its March 2020 decision denying her first motion for relief under Rule 60. Vermont Rule of Appellate Procedure 4 provides that if a party fails to timely file a notice of appeal, the party may request an extension from the superior court. V.R.A.P. 4(d). The court may grant an extension if the party files the motion within thirty days after the initial appeal period expired and shows that the failure to timely file was due to "excusable neglect or good cause." V.R.A.P. 4(d)(1). The Reporter's Notes to the rule explain that "[g]ood cause refers to situations in which there is no fault on the movant's part—e.g., failure of the Postal Service to deliver the notice of appeal," while "[e]xcusable neglect assumes fault on the part of the movant." Reporter's Notes—2006 Amendment, V.R.A.P. 4. The decision whether to grant a motion for extension of time to appeal is discretionary and we will reverse only if the court withheld discretion altogether or exercised it for "clearly untenable" reasons. Clark v. Baker, 2016 VT 42, ¶ 20, 201 Vt. 610, 146 A.3d 326 (quotation omitted).

¶ 14. In her motion for extension of time, mother attributed her untimely filing of the notice of appeal to both good cause and excusable neglect. She asserted that due to the coronavirus pandemic, she lacked access to technology that would allow her to access or print documents necessary to file an appeal and was unable to notarize documents. She stated that she had moved to Missouri for work and did not have a computer, making it difficult to access the Vermont court system. She argued that these circumstances "interfered with [her] ability to retain or consult with counsel" to pursue an appeal.

5

¶ 15.    The family division denied the motion. It noted that although mother implied that she was pro se and had difficulty filing the appeal herself, the record showed that mother had in fact been represented by counsel at all relevant times. The attorney who filed the original Rule 60 motion had never withdrawn from the case and was still mother's attorney of record. Mother did not explain why her attorney, who had vigorously prosecuted the Rule 60 motion, was unable to perform the relatively simple tasks necessary to file a notice of appeal. The court also concluded that mother did not demonstrate excusable neglect, because she did not explain why she could not contact her attorney by telephone to file an appeal on her behalf. The court stated that it had no reason to doubt mother's good faith in seeking an extension. However, it concluded that granting the motion would unduly prejudice K.S. by drawing out the termination proceedings and potentially removing her from the home where she had lived for nearly her entire life.

¶ 16.    On appeal, mother argues that the court's decision must be reversed because the court failed to consider whether the coronavirus pandemic constituted good cause for her delay in filing a notice of appeal. This argument lacks merit. The first part of the court's analysis was clearly focused on mother's good-cause argument, which was that she was prevented from filing a timely notice of appeal due to her relocation for work, implied lack of counsel, and pandemic-related restrictions. The court considered these allegations and expressly found that the facts alleged by mother did not constitute good cause for the delay. The court did not withhold its discretion, and its explanation for its decision is not unreasonable or inconsistent with existing law.[1]  See Clark, 2016 VT 42, ¶ 20.

---

[1] On March 16, 2020, this Court issued the first version of Administrative Order Number 49, which, in relevant part, permitted email filings in the superior court. The administrative order stated that it was not extending statutes of limitations or court filing deadlines. Although the Governor of Vermont issued executive orders late that March suspending in-person business operations for nonessential businesses, including law firms, no executive or administrative order suspended court filings or litigants' obligations under court filing deadlines.

¶ 17. Mother further argues that the court erred in concluding that she did not demonstrate excusable neglect. We disagree. In determining whether excusable neglect exists, courts consider "the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." In re Town of Killington, 2003 VT 87A, ¶ 16, 176 Vt. 60, 838 A.2d 98 (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)). We apply the excusable-neglect standard strictly, "lest there be a de facto enlargement of the appeal-filing time to sixty days." Town of Killington, 2003 VT 87A, ¶¶ 17, 19 (holding internal-office-procedure breakdown not excusable neglect as matter of law); see also In re Lund, 2004 VT 55, ¶ 7, 177 Vt. 465, 857 A.2d 279 (mem.) (holding mistaken reading of rule not excusable neglect); Bergeron v. Boyle, 2003 VT 89, ¶ 22, 176 Vt. 78, 838 A.2d 918 (holding lawyer's vacation and internal-office-procedure breakdown not excusable neglect). In considering whether excusable neglect exists, "the appropriate focus is on the third factor: the reason for delay, including whether it was within the reasonable control of the movant." Town of Killington, 2003 VT 87A, ¶ 16.

¶ 18. The family division applied the appropriate standard in this case and its decision is reasonable. As the court found, mother did not adequately explain the reason for the delay in her motion to the court.[2] Her proffered reason—that she herself was unable to access a computer to file the appeal—did not explain why her attorney could not file an appeal on her behalf. She did not, for example, allege that she was unable to contact the attorney or that the attorney was unavailable. Under these circumstances, the court acted within its discretion in concluding that mother did not demonstrate excusable neglect. We therefore affirm the court's denial of mother's motion for extension of time.

_____

[2] On appeal, mother offers various theoretical reasons for the delay, such as the difficulty and expense of ordering a transcript, but she did not raise these arguments before the trial court.

## B. Second Rule 60(b) Motion

¶ 19.   Mother next challenges the family division's order denying her second motion for relief from judgment.  Mother argues that the court erred in concluding that it lacked subject matter jurisdiction to consider the motion due to K.S.'s adoption, and should have granted her motion to vacate the termination order and hold a hearing on K.S.'s best interests pursuant to 33 V.S.A. §§ 5113-5114.

¶ 20.   " 'Subject matter jurisdiction' refers to the power of a court to hear and determine a general class or category of cases."  Lamell Lumber Corp. v. Newstress Int'l, Inc., 2007 VT 83, ¶ 6, 182 Vt. 282, 938 A.2d 1215.  Whether the family division had subject matter jurisdiction to consider mother's second Rule 60 motion is a legal question that we review de novo.  See Penland v. Warren, 2018 VT 70, ¶ 6, 208 Vt. 15, 194 A.3d 755.  "Because the jurisdiction of the trial courts is shaped by the legislature, subject matter jurisdiction is a question of statutory interpretation."  Baron v. McGinty, 2021 VT 6, ¶ 29, __ Vt. __, __ A.3d __ (citation omitted) (quotation omitted); see also Off. of Child Support ex rel. Lewis v. Lewis, 2004 VT 127, ¶ 7, 178 Vt. 204, 882 A.2d 1128 (explaining that scope of family division's jurisdiction is limited by statute).  We interpret statutes to give effect to legislative intent, as expressed in the plain language of the statute.  Baron, 2021 VT 6, ¶ 30.

¶ 21.   Section 5103 of Title 33 gives the family division exclusive jurisdiction over all proceedings concerning a child who is alleged to be CHINS.  33 V.S.A. § 5103(a).  Subsection (d) provides: "If the child is not subject to another juvenile proceeding, jurisdiction shall terminate automatically . . . upon the adoption of a child following a termination of parental rights proceeding."  Id. § 5103(d).  In In re C.L.S., 2021 VT 25, ¶ 12, __ Vt. __, __ A.3d __, we concluded that the family division lacked jurisdiction under § 5103(d) to hear a post-adoption Rule 60 motion that was filed after this Court issued its mandate affirming the father's direct appeal from the termination of his parental rights, because no other motion or proceeding concerning the child was

8

pending at the time. The father in that case argued that the phrase "not subject to another juvenile proceeding" in § 5103(d) did not require the other proceeding to actually be pending. We disagreed, explaining that the phrase clearly "is intended to mean that the child is not then affected by a pending juvenile case." Id. ¶ 12 n.2. We rejected father's claim that because the time for filing a petition for certiorari with the U.S. Supreme Court had not yet expired, the child was not yet legally free for adoption, noting that father had not sought to stay the mandate or actually filed a petition for certiorari. Id. ¶ 12 n.1.

¶ 22. Here, the family division issued its decision denying mother's original Rule 60(b) motion on March 10, 2020. On April 2, 2020, K.S. was adopted. At that point, she was not subject to an appeal or any other pending juvenile proceeding, and the family division's authority to hear new substantive motions ended.[3] Id. ¶ 12. Although mother still had the right to appeal, she failed to timely exercise that right.[4] Accordingly, the family division correctly held that it lacked jurisdiction to consider mother's second Rule 60 motion and subsequent motions that were outside the scope of the later remand.

¶ 23. Mother argues that the termination order nevertheless must be vacated because the court failed to ascertain that her relinquishment was voluntary and because she received ineffective

---

[3] The family division plainly still retained authority to consider mother's motion for extension of time to appeal, which was determinative of whether this Court had jurisdiction over the appeal. Under Vermont Rules of Appellate Procedure 4(d) and 26(b)(1), only the family division could decide that question, and we do not view 33 V.S.A. § 5103(d) as prohibiting the family division from addressing such procedural motions. See Town of Killington, 2003 VT 87A, ¶ 15 (explaining that time limits for filing appeals are procedural matters and their application does not affect substantive rights or jeopardize execution of statute).

[4] We need not and do not decide whether the adoption would have prevented this Court from exercising jurisdiction over the appeal if mother had timely filed a notice of appeal after the adoption. In this case, she did not do so. And we need not decide whether an adoption can cut off the family division's jurisdiction to hear a timely Rule 60(b) motion filed on account of ineffective assistance of counsel. In this case, mother had filed a Rule 60(b) motion, and the trial court had issued a judgment that became final upon expiration of the appeal period.

9

assistance of counsel at the relinquishment stage.[5] These arguments were rejected on their merits by the family division in its first Rule 60 decision, which mother failed to timely appeal. We therefore lack jurisdiction to consider them. See LaMoria v. LaMoria, 171 Vt. 559, 560, 762 A.2d 1233, 1235 (2000) (mem.) (holding that mother's failure to timely appeal prior order in custody case prevented her from raising claim related to prior order in later appeal); Allen v. Vt. Emp't Sec. Bd., 133 Vt. 166, 168, 333 A.2d 122, 124 (1975) ("A timely appeal is jurisdictional."). Similarly, we need not address whether the family division correctly held in its March 2020 decision that a best-interests hearing is not required under 33 V.S.A. § 5114(a) when the parties stipulate to termination, because mother failed to timely appeal that decision.

## C. Applicability of the ICWA

¶ 24.    We turn to the family division's decision regarding the applicability of the ICWA to K.S. Mother claims that the court erred in concluding that DCF's belated inquiry and due diligence were sufficient under the ICWA; ignored information mother attempted to provide indicating that K.S. may have been a member of another tribe; and erroneously denied discovery into out-of-state records and excluded testimony from a proffered expert on tribal law. She also claims that the court's initial noncompliance with the ICWA rendered her relinquishment

---

[5] Mother repeatedly states in her supplemental brief that DCF conceded during the remand proceedings that her rights were involuntarily terminated and that she received ineffective assistance of counsel. The record does not support this claim. The statement by a DCF witness during her testimony about DCF's efforts to give the ICWA notices that she understood this CHINS case to be an involuntary proceeding cannot reasonably be viewed as a concession that mother's relinquishment was involuntary. Similarly, the statements by DCF's attorney that there had been a failure by all parties and the court to follow up on father's statement that K.S. had Indian heritage does not amount to an admission that mother's first attorney was ineffective. Accordingly, we reject mother's argument, which appears to be raised for the first time on appeal, that the termination order must be vacated because she was fraudulently induced into believing that she was voluntarily relinquishing her rights when in fact they were terminated involuntarily.

10

involuntary and required the court to vacate the termination order.[6] We conclude that these claims are without merit and affirm.

¶ 25. Congress enacted the ICWA in 1978 "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes." 25 U.S.C. § 1902. An "Indian child" is defined under the ICWA as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." Id. § 1903(4). The ICWA provides that when the court has reason to know that an Indian child is involved in a juvenile proceeding, "the party seeking the foster care placement of, or termination of parental rights to" the child must notify the child's tribe or, if the tribe cannot be determined, to the Bureau of Indian Affairs (BIA), and give the tribe a chance to exercise jurisdiction or to intervene.[7] Id.§ 1912(a). The BIA has promulgated regulations to administer the ICWA, which require a state court to ask each participant at the beginning of a child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. 25 C.F.R. § 23.107(a). The regulations further provide:

---

[6] Mother also argues that the court erred in denying her other motions for lack of jurisdiction and because they were outside the scope of the remand from this Court. We disagree. As discussed above, the court lacked jurisdiction to entertain further motions due to K.S.'s adoption. On remand, the court was acting pursuant to our mandate and therefore was limited to addressing questions related directly to the ICWA issue. See Coty v. Ramsey Assocs., Inc., 154 Vt. 168, 171, 573 A.2d 694, 696 (1990) (explaining that on remand, trial court "act[s] pursuant to our mandate and thus [is] limited to following our specific directions as interpreted in light of the opinion"). The court therefore did not err in declining to address mother's third Rule 60 motion, motion for judgment on the pleadings, motion to revoke K.S.'s consent to termination, and motion for discovery into the CHINS proceeding. The court did address mother's motions that were related to the ICWA issue.

[7] "Although the ICWA states it is the duty of the party seeking termination of parental rights to give notice, we have found that this duty also extends to the court." In re J.T., 166 Vt. 173, 181, 693 A.2d 283, 288 (1997).

> If there is reason to know the child is an Indian child, but the court does not have sufficient evidence to determine that the child is or is not an "Indian child," the court must:
>
> (1) Confirm, by way of a report, declaration, or testimony included in the record that the agency or other party used due diligence to identify and work with all of the Tribes of which there is reason to know the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a biological parent is a member and the child is eligible for membership); and
>
> (2) Treat the child as an Indian child, unless and until it is determined on the record that the child does not meet the definition of an "Indian child" in this part.

Id. § 23.107(b).

¶ 26. In this case, the court had reason to know that K.S. might be an Indian child as early as February 2019. A court has reason to know that a child is an Indian child if "[a]ny participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that the child is an Indian child." Id. § 23.107(c)(1). The first page of the permanency case plan submitted to the court in February 2019 stated that father reported that K.S. had Cherokee heritage, though she was not a registered member of the tribe. Father was a participant in the proceeding at that point. Under the plain language of the regulation and our case law, father's statement was sufficient to give the court reason to know that K.S. was an Indian child for purposes of the ICWA. See In re J.T., 166 Vt. at 182, 693 A.2d at 288 (holding father's statement during state-requested psychological evaluation that his father was "full-blooded Mohican" gave court reason to believe children were of Indian ancestry); see also In re T.G., 272 Cal. Rptr. 3d 381, 393-95 (Cal. Ct. App. 2020) (holding that mother's indication on court form that she had Cherokee ancestry "unquestionably provided reason to believe Indian children might be involved in these . . . proceedings").

¶ 27. Mother argues that the failure to provide notice pursuant to the ICWA required the termination order to be vacated. Alternatively, she argues that she had the right to withdraw

consent to termination because her consent was obtained under duress. See 25 U.S.C. § 1913(d). Our case law is clear, however, that vacating an existing termination order "is not warranted where the only error is failure to provide notice and there is no strong showing that the ICWA applies." In re J.T., 166 Vt. at 184, 693 A.2d at 289. Instead, the appropriate remedy is a remand for the family division to give appropriate notice and determine if the child qualified as an Indian child under the ICWA. See id. (concluding that failure of court in termination-of-parental-rights proceeding to give notice required by ICWA required remand, but not necessarily reversal, of termination order; if child was determined by tribe to be Indian, then termination order would be vacated); In re M.C.P., 153 Vt. 275, 289, 571 A.2d 627, 635 (1989) (stating same); see also 25 C.F.R. § 23.137(b) ("Upon a showing that an action for foster-care placement or termination of parental rights violated any provision of 25 U.S.C. 1911, 1912, or 1913, the court must determine whether it is appropriate to invalidate the action."). Consistent with the law, we stayed the appeal and remanded the matter for the court to address the ICWA issue.

¶ 28.    Mother argues that on remand, the court erred in concluding that DCF used due diligence to identify and work with all of the tribes of which K.S. could possibly be a member. After mother raised the ICWA issue in her brief in August 2020, DCF sent notice of the proceeding and K.S.'s possible membership to the three federally recognized Cherokee tribes: the Eastern Band of Cherokee Indians, the Cherokee Nation, and the United Keetoowah Band of Cherokee Indians in Oklahoma. See Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01 (Jan. 30, 2020). DCF also sent the notice to the BIA Regional Director. A few weeks later, DCF sent a supplemental notice to each of these entities that included additional familial information and corrected an error in the first notices. The court found that the notices sent by DCF were adequate under the ICWA. Mother argues, however, that the notices were insufficient because her attorney submitted information describing the potential relevance of other tribes besides the Cherokee.

13

¶ 29. The record belies mother's suggestion that the family division had reason to know that K.S. could be a member of a tribe other than the Cherokee. After the first day of the ICWA hearing, mother's attorney filed a letter with the court clarifying that he had reason to believe K.S. was an Indian child, but "d[id] not have actual, personal knowledge of definitive tribal status." He went on to state that he had spent significant time inquiring with "plausibly related tribes," such as the Chickasaw, Creek (Muscogee), Cheyenne, and Arapaho. However, he did not state that he had any information suggesting that K.S. was actually a member of one of those tribes. Similarly, the declaration mother submitted from a Native American genealogist stating that a family-lore connection to the Cherokee can sometimes be a modern recharacterization of a connection to certain other tribes who historically inhabited the same geographic area was simply too vague to give the court reason to know that K.S. herself was a member of those tribes under the ICWA.

¶ 30. We recognize the difficulty presented when the only information provided to the court is a vague statement of Indian ancestry. "Fortunately the courts are not required to become experts in tribal genealogy." In re J.T., 166 Vt. at 183, 693 A.2d at 289. Presumably because parents often lack information about tribal affiliation, the ICWA and the relevant BIA regulation require notice to be provided to the appropriate BIA Regional Director in addition to any identified tribes. See 25 U.S.C. § 1912(a) (stating that "[i]f the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner"); 25 C.F.R. § 23.11(a)-(b)(1) (explaining process for notifying BIA Regional Director). The court found that DCF made a good-faith effort to identify and work with the tribes of which there was reason to know K.S. could be a member by providing notice to the three federally recognized Cherokee tribes as well as to the BIA Regional Director. This notice was sufficient to comply with the ICWA. See 25 C.F.R. § 23.107(b) (requiring "due diligence to identify and work with all of the Tribes of which there is reason to know the child may be a member (or eligible for membership)"). "[T]he obligation is only one of inquiry and not an absolute duty to ascertain or

14

refute Native American ancestry." In re Antoinette S., 129 Cal. Rptr. 2d 15, 25 (Cal. Ct. App. 2002).

¶ 31. Mother further claims that the court erred in excluding the testimony of her proposed expert, a professor of indigenous law, from the ICWA hearing. We review the trial court's decision to admit or exclude evidence for abuse of discretion and will reverse "only where that discretion is withheld or exercised unreasonably." State v. Cameron, 2016 VT 134, ¶ 19, 204 Vt. 52, 163 A.3d 545. Mother sought to have her expert testify about the requirements of the ICWA, whether she believed DCF's actions complied with those requirements, and whether the family division had reason to know that K.S. was an Indian child. The trial court acted within its discretion in excluding the professor's testimony because she would have been offering her opinion on a question of law. See Town of Brighton v. Griffin, 148 Vt. 264, 271, 532 A.2d 1292, 1296 (1987) ("As a general rule, a witness may not give his opinion on questions of law, for the determination of such questions is exclusively within the province of the court." (citation omitted)). Although mother proffered that the expert would testify about whether the information provided by DCF was sufficient to allow the tribes to determine whether K.S. was a member, this was also essentially a legal opinion about whether DCF complied with the ICWA regulations, which set forth the specific information DCF was required to provide, if available. See 25 C.F.R. § 23.111(d)(2)-(3). It was for the court, not a witness, to determine whether DCF's efforts constituted due diligence under the ICWA.

¶ 32. Similarly, the court acted within its discretion in denying mother's request to subpoena unspecified vital records from Mississippi and Tennessee. As the court reasoned, the ICWA does not mandate such discovery when a child has potential Indian heritage. Rather, the ICWA requires DCF to give notice of "[a]ll names known (including maiden, married, and former names or aliases) of the parents, the parents' birthdates and birthplaces, and Tribal enrollment numbers if known," and "[i]f known, the names, birthdates, birthplaces, and Tribal enrollment

information of other direct lineal ancestors of the child, such as grandparents." 25 U.S.C. § 23.111(d)(2)-(3). The ICWA's repeated use of the phrase "if known" anticipates that some information may be incomplete. Where the identity of the child's tribe is unknown, the ICWA simply requires notice to be sent to the BIA Regional Director, with "as much information as is known regarding the child's direct lineal ancestors." 25 C.F.R. § 23.111(e); see also 25 U.S.C. § 1912(a). DCF complied with these requirements in this case; it provided the tribes and the BIA with the information it had about K.S. and her father, as well as supplemental information from publicly available databases regarding her ancestors. Given the vagueness of mother's request for discovery into other records and the lack of support in the ICWA for such discovery, the court did not act outside of its discretion in denying her request.[8]

¶ 33. Mother argues that because the court had reason to believe that K.S. was an Indian child, the court should have applied the substantive provisions of the ICWA, which require an involuntary termination of parental rights to be supported by evidence beyond a reasonable doubt and, in the case of voluntary termination, permit a parent to withdraw consent even after adoption if consent was obtained by duress. 25 U.S.C. §§ 1912-1913. We agree that the court, once it had reason to know of K.S.'s potential Indian ancestry in February 2019, should have treated her as an Indian child and ensured compliance with the ICWA notice provision. It did not do so until after remand, which was error. However, it is now clear that the ICWA did not apply to this case, making the error harmless. See In re R.W., 2011 VT 124, ¶ 17, 191 Vt. 108, 39 A.3d 682 ("We have employed the harmless error standard in termination cases, and, under that standard, an error warrants reversal only if a substantial right of the party is affected." (citation omitted) (quotation omitted)); see also In re Antoinette S., 129 Cal. Rptr. 2d at 26 (holding that court violated ICWA notice provision by conducting termination hearing less than ten days after BIA received notice

---

[8] On appeal, mother does not challenge the court's decision denying her request to obtain genetic material from K.S.

and failing to make express finding regarding applicability of ICWA, but error was harmless because ICWA clearly did not apply). The Cherokee tribes contacted by DCF responded that K.S. was not a member of their tribes, and there was no evidence that K.S.'s biological parents were members of a tribe. The court properly concluded based on this evidence that K.S. was not an Indian child—a conclusion that mother does not challenge. See In re M.C.P., 153 Vt. at 284, 571 A.2d at 632 (affirming conclusion that child was not Indian child where evidence showed that neither child nor child's biological parents were members of federally recognized tribe). Accordingly, the court's initial failure to comply with the ICWA did not prejudice mother.[9]

Affirmed.

FOR THE COURT:

_____
Chief Justice

---

[9] Mother also argues that once the ICWA notice violation was brought to the court's attention, it was required "to determine whether it is appropriate to invalidate the action under the standard of review under applicable law." BIA, Guidelines for Implementing the Indian Child Welfare Act, § K.3, 2016 WL 8738010. She argues that the court failed to comply with this guideline because the court never made a determination that termination was in K.S.'s best interests under 33 V.S.A. § 5114(a) or that continued custody by mother was likely to result in serious emotional or physical damage to K.S. under 25 U.S.C. § 1912(f). As discussed above, however, the evidence indicated that K.S. was not an Indian child, and therefore the substantive provisions of the ICWA did not apply. Accordingly, the court was not required by the ICWA to revisit the merits of the termination decision.